UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sai Her, | Case No. 0:16-CV-04389-KMM |
| Plaintiff, | |
| v. | |
| Nancy A. Berryhill, | **ORDER** |
| Defendant. | |

David L. Christianson, Christianson Law, 1201 Marquette Ave S Ste 110, Minneapolis, MN 55403, Thomas A. Krause, Schott, Mauss & Associates, PLLC, 6611 University Avenue, Suite 200, Des Moines, IA 50324, counsel for plaintiff

Ann M. Bildtsen, United States Attorney's Office, 300 S 4th St Ste 600, Minneapolis, MN 55415, counsel for defendant

Plaintiff Sai Her appeals the denial of her application for Social Security disability benefits, Compl., ECF No. 1, and the parties have filed cross motions for summary judgment. Pl.'s Mot., ECF No. 14; Def.'s Mot., ECF No. 16. Ms. Her asks the Court to reverse the denial, enter judgment, and remand for calculation and payment of benefits, or in the alternative, to reverse the decision and remand for further proceedings. Pl.'s Mem. at 34-35, ECF No. 15. The Commissioner asks that the Court affirm the Commissioner's decision, grant her motion for summary judgment, and deny Ms. Her's motion for summary judgment. Def.'s Mem. at 16-17, ECF No. 17. For the reasons that follow, Ms. Her's motion is denied, the Commissioner's motion is granted, and the Commissioner's decision is affirmed.

I.   **Background**

On December 3, 2013, Ms. Her applied for disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Act, alleging disability with an onset date of

March 14, 2008. Admin. R. ("AR") at 199, 203.[1] Ms. Her is currently 58 years old, and suffers from cervicalgia, headaches, major depressive disorder, and post-traumatic stress disorder. *Id.* at 17. She immigrated to the United States in 1987 from Laos. *Id.* at 50. Ms. Her's life has undoubtedly been marked by trauma. Her father was "shot in combat during the war. And his side of the head was blown off. His leg was broken, and when they brought him to [her family], that memory still shocks [her]." *Id.* at 60. And in 2002, her brother was murdered by his wife. *Id.* at 416. Ms. Her has nightmares and flashbacks as a result of these traumas. *See, e.g., id.* at 400, 403.

After immigrating to the United States, Ms. Her took an English language course. *Id.* at 50. Despite this course, she still struggles with the language: she finds reading and writing difficult and characterizes her speaking skills as only sufficient for "[r]eally basic conversation." *Id.* at 51. Ms. Her worked primarily assembling automobile parts, but stopped working in March 2008 after pain interfered with her ability to complete the required tasks. *Id.* at 53, 55. She now spends her time caring for her husband, which is a great source of stress, but also tending the family garden, socializing with family, and walking outside when possible. *Id.* at 359, 379, 654.

Ms. Her's application for disability benefits was denied initially in February 2014 and on reconsideration in October 2014. *Id.* at 92, 104, 120, 132. Ms. Her requested a hearing in the matter, and ALJ Virginia Kuhn conducted such a hearing in September 2015. *Id.* at 153, 168. At the hearing, the ALJ heard testimony from Ms. Her through a translator and from an impartial vocational expert. *Id.* at 43-79. ALJ Kuhn affirmed the denial of benefits in a detailed decision a month later. *Id.* at 12-37.

In that decision, the ALJ followed the well-known sequential process for considering claims for DIB and SSI. 20 C.F.R. §§ 404.1520(a), 416.920 (a). She found that:

(1) Ms. Her had not engaged in substantial gainful activity since March 14, 2008;

(2) Ms. Her has severe impairments that would affect her ability to work;

---

[1] In citations to the administrative record in this Order, the page number given refers to the PDF pagination rather than that marked on the administrative record pages.

(3) Ms. Her's impairments do not meet or medically equal the "listings" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Ms. Her's impairments necessitate some limitations on her work, but she has the residual functional capacity ("RFC") to perform medium work; and

(5) Though Ms. Her would not be able to continue her relevant past work, she would be able to perform multiple jobs that are widely available in the national economy.

*See id.* at 17-37. The ALJ's decision became the final decision of the Commissioner after the appeals council denied Ms. Her's request for review a year later. *Id.* at 6-8. Ms. Her filed the complaint here the following December, and the matter is now before the Court for judicial review pursuant to 42 U.S.C. § 405(g). *See* Compl.

## II. Legal Standard

The Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g), and the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). This review is deferential, *see Kelley v. Barnhart*, 372 F.3d 958, 960 (8th Cir. 2004), and is "limited to determining whether there is substantial evidence based on the entire record to support the ALJ's factual findings, and whether [the] decision was based on legal error." *Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996); *see also Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006); *Tellez v. Barnhart*, 403 F.3d 953, 956 (8th Cir. 2005). "Substantial evidence is less than a preponderance of the evidence, but is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotation marks omitted). Where substantial evidence supports the Commissioner's findings, the Court should not reverse those findings merely because other evidence exists in the record to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994).

## III. Analysis

In support of her motion, Ms. Her argues that ALJ Kuhn gave insufficient weight to the limitations noted by Dr. Maradeth Searle, Psy. D, LP. Pl.'s Mem. at 17-31. She also argues that the ALJ undervalued the opinion of Ms. Carol Thersleff, CNP. *Id.* at 31-34. Both care providers opined that Ms. Her's mental health troubles

would render her unable to work a regular, full-time job.[2] *See* AR at 529-31; 601-03. The Commissioner responds that ALJ Kuhn properly considered opinion evidence as to the RFC. Def.'s Mem. at 4-16.

### A.     Dr. Maradeth Searle

Dr. Maradeth Searle is a licensed psychologist and doctor of psychology. *See* AR at 412 ("Maradeth H. Searle, PsyD, LP"). Ms. Her had 45-minute appointments with Dr. Searle approximately once monthly between December 27, 2011 and May 10, 2015. *See* AR at 354-420, 575-92, 599-616, 654-62.

In Dr. Searle's treatment notes, she consistently characterized Ms. Her's symptoms as mild or moderate. *See, e.g., id.* at 355, 394, 414, 584. Ms. Her always dressed appropriately, was responsive, and maintained eye contact at her appointments with Dr. Searle, and Dr. Searle's notes never indicated that Ms. Her experienced suicidal ideation. *See, e.g., id.* at 354, 376-77, 388-89, 401, 660. Dr. Searle consistently classified Ms. Her's stress rating as moderate. *See, e.g., id.* at 358, 394, 410, 582. And Ms. Her frequently discussed improved symptoms as a result of medication and often described the activities in which she engaged. *See, e.g., id.* at 359, 388, 397, 575.

Dr. Searle completed a mental impairment questionnaire at the request of Ms. Her's attorney after Ms. Her's benefits applications had been denied initially and on reconsideration. *Id.* at 599-604. In that form, Dr. Searle expressed opinions that Ms. Her was unable to meet competitive standards in almost every factor in the "mental abilities and aptitudes needed to do unskilled work" section and that Ms. Her had no useful ability to function with regard to every factor in the "mental abilities and aptitudes needed to do semiskilled and skilled work" section. *Id.* at 601-02. Dr. Searle also checked those two levels of functioning for all but one factor in the "mental abilities and aptitude needed to do particular types of jobs" section. *Id.* at 602. Despite prompts after each section to "[e]xplain limitations falling in the three

---

[2]  Ms. Her's disability claim was based on "stomach problem[s], back pain, right leg pain, and depression." *See* AR at81. ALJ Kuhn thoroughly considered Ms. Her's physical ailments and the RFC reflects limitations a result of those ailments. *Id.* at 23, 24-29. Ms. Her does not contest ALJ Kuhn's findings with regard to her physical impairments, so the Court does not discuss them or Ms. Her's related providers here.

-4-

most limited categories . . . and include the medical/clinical findings that support this assessment," Dr. Searle provided no explanation for her selections. *Id.* at 601-02.

### Ms. Her's Arguments

Ms. Her frames her criticism of ALJ Kuhn's decision as an RFC issue: "the ALJ's residual functional capacity assessment is flawed as the ALJ failed to evaluate properly the work-related limitations from treating psychologist Dr. Maradeth Searle." Pl.'s Mem. at 17. But all of Ms. Her's subsequent arguments focus more on the ALJ's weight and analysis of Dr. Searle's opinion, rather than the RFC itself. *Id.* at 17-31. Specifically, Ms. Her contends that ALJ Kuhn "failed to expressly recognize Dr. Searle was a doctor and a licensed psychologist," substituted her own analysis of the medical evidence, did not treat Dr. Searle's opinion as that of an acceptable medical source or a treating provider, did not give good reasons for discounting Dr. Searle's opinion, and improperly accounted for Dr. Searle's global assessment of functioning scores. *Id.* Based on the nature of these arguments, the Court interprets Ms. Her's challenge to be one of the weight given to Dr. Searle's opinion.

### The ALJ's Treatment of Dr. Searle's Opinion

Before considering the opinion evidence, the ALJ noted that

> The regulations require the undersigned consider: (1) the examining relationship between the medical source and the claimant; (2) the treatment relationship, including the length of the relationship, frequency of examinations, and nature and extent of the treating relationship; (3) support by medical evidence; (4) consistency of the opinion with the record as a whole; (5) the source's specialization or lack thereof; and (6) any other factors which support or contradict the opinion.

*Id.* at 31 (quoting 20 C.F.R. §§ 404.1527(d), 416.927(d)). She proceeded to give little weight to Dr. Searle's opinions as expressed in the doctor's mental impairment questionnaire after noting that Dr. Searle had met with Ms. Her "on numerous occasions during the relevant time period and ha[d] established a treating relationship with her." AR at 32. ALJ Kuhn further observed that Dr. Searle's notes reflected very little in the way of objective findings and that Ms. Her saw Dr. Searle only monthly. *Id.* Ultimately, ALJ Kuhn concluded that "the weight of the objective

medical findings in the record" did not corroborate the limitations Ms. Her claimed. *Id.*

### Analysis

For several reasons, the Court concludes that substantial evidence supports the ALJ's evaluation of Dr. Searle's opinion. First, although Ms. Her is correct that the ALJ did not explicitly conclude that Dr. Searle is a treating source, she nonetheless properly analyzed the opinion. *See* Pl.'s Reply at 3-5, ECF No. 19. In context, ALJ Kuhn's reasoning with regard to both Ms. Thersleff and Dr. Searle demonstrates her application of the appropriate standards to Dr. Searle's opinion. Specifically, the ALJ first noted that though Ms. Thersleff may have had a treating relationship with Ms. Her, Ms. Thersleff "is not a psychiatrist or psychologist," implying that Ms. Thersleff therefore does not qualify as an acceptable medical source. AR at 31; *see also* 20 C.F.R. § 404.1502 (a) (listing licensed physicians and licensed psychologists as acceptable medical sources). In contrast, ALJ Kuhn did not discount the value of Dr. Searle's treating relationship with Ms. Her by asserting that Dr. Searle's opinion did not qualify as an acceptable medical source. AR at 32. And the cases on which Ms. Her relies do not require an ALJ to explicitly state whether a source is an acceptable medical source with a treating relationship. *See* Pl.'s Mem. at 23; Pl.'s Reply at 4-5.

Second, aside from the title of "treating source," the ALJ properly considered whether medical evidence and the record as a whole provided support for Dr. Searle's opinion. *See* AR at 32-35. ALJ Kuhn gave three reasons for affording Dr. Searle's opinion little weight, each of which is supported by the record: the subjectivity and lacking specificity of Dr. Searle's treatment notes, the fairly routine course of treatment, and the frequent reference to greater activity and ability than claimed possible. Each reason is well-supported by the record.

First, Dr. Searle's notes "lacked specificity with regard to specific mental status examination findings" and were based on Ms. Her's "subjective reports of symptoms" with very little objective medical evidence. AR at 32; *see also Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) ("The ALJ was entitled to give less weight to [a doctor's] opinion, because it was based largely on [the claimant's] subjective complaints rather than on objective medical evidence."). A careful review of the record supports this conclusion. Some of Dr. Searle's treatment notes contained observations as to

-6-

Ms. Her's affect and mood, which were often described with one or two nonspecific adjectives like "congruent," "talkative," or "anxious." *See, e.g.,* AR at 356, 365, 374, 386. The vast majority of Dr. Searle's notes began with "client said," "client reports," or something similar. *See, e.g.,* AR at 354, 388, 575, 654. Furthermore, the sections of the treatment notes that concerned more objective observations were fairly minimal. *See, e.g., id.* at 356, 377, 391-92. And an ALJ may discount subjective complaints where they are "inconsistent with medical reports, daily activities, and other such evidence." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003) (quotation omitted).

ALJ Kuhn also placed little weight on Dr. Searle's opinion because, despite asserting very significant limitations on Ms. Her's mental impairment questionnaire, Dr. Searle's consistent treatment notes and recommendations did not indicate a similarly intense manifestation of symptoms or course of treatment. AR at 32; *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c) (including consistency as a factor for consideration in determining weight to give to an opinion). Dr. Searle frequently rated Ms. Her's symptoms as moderate and noted no suicidal or homicidal ideation. *See, e.g.,* AR at 354-55, 388-89, 394, 414, 660. Most of the treatment notes focused on Ms. Her's reports of pain and difficulty sleeping through the night and her husband's medical concerns rather than Ms. Her's own depression. *See, e.g., id.* at 354, 376, 575, 660. And Dr. Searle's treatment plans focused primarily on developing "calming and coping skills through relaxation techniques, exercise and social contact." *See, e.g,, id.* at 407, 408-09, 410, 412, 414.

Moreover, the ALJ properly found that Dr. Searle's notes frequently reflected more activity and ability than that suggested by the mental impairment questionnaire and claimed by Ms. Her. AR at 32-35; *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c) (including supportability as a factor for consideration in determining weight to give to an opinion). For example, Ms. Her indicated that she enjoyed shopping at flea markets, helped with the family garden, and walked outside when the weather allowed. *See, e.g.,* AR at 354, 361, 388, 397, 575, 581. Dr. Searle's notes also referred to Ms. Her caring for her wheelchair-bound, increasingly disabled husband on a daily basis. *See, e.g., id.* at 355 (describing husband's symptoms); 654 ("[S]he is the one that has to be with him all day and all night and seldom gets a break.").

Lastly, the Court disagrees with Ms. Her that the global assessment of functioning (GAF) scores provided primarily by Dr. Searle demonstrate that ALJ Kuhn improperly discredited Dr. Searle's opinion. Pl.'s Mem. at 28-31. Ms. Her

argues that the "ALJ failed to discuss or consider the many GAF scores below 50." *Id.* at 30. But the ALJ explained the weight she gave to the GAF scores: "the undersigned generally gives less weight to a specific GAF score than to the bulk of other, more convincing evidence" because the GAF score provides only "a particular clinician's subjective evaluation at a single point in time" and is "not designed for adjudicative decisions." AR at 30. Moreover, Dr. Searle did not provide any support for her GAF ratings. *Id.* And "an ALJ may afford greater weight to medical evidence . . . than to GAF scores when the evidence requires it." *Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010) (quotation omitted); *see also Revised Med. Criteria for Evaluating Mental Disorders & Traumatic Brain Injury*, 65 FR 50746-01, 2000 WL 1173632, at *50764-65 (noting that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings").

In sum, though the ALJ's opinion is potentially imprecise as to Dr. Searle's title and role as a treating source, substantial evidence in the record supports the conclusion that Ms. Her is not entitled to benefits, generally, and the ALJ's evaluation of Dr. Searle's opinion specifically. ALJ Kuhn's reference to Dr. Searle as Ms. Searle was a matter of opinion drafting style and does not alone require remand. *See Johnson v. Apfel*, 240 F.3d 1145, 1149 (8th Cir. 2001) (finding that an arguable deficiency "in the ALJ's opinion-writing technique does not require this Court to set aside a finding that is supported by substantial evidence"). Dr. Searle's notes repeatedly reflected only mild to moderate symptoms, frequently discussed a higher level of activity than Ms. Her's claimed limitations would allow, and often mentioned effective management of symptoms with medication. The ALJ properly considered Dr. Searle's opinion, and remand is not appropriate.

### B.     Ms. Carol Thersleff

Ms. Her also argues that ALJ Kuhn erred in her assessment of an opinion given by Carol Thersleff, a nurse practitioner. *See* AR at 412 ("Carol Thersleff, RN, NP"). Ms. Her had 15-minute appointments with Ms. Thersleff approximately once every three months between February 14, 2012 and June 25, 2015. AR at 498-533, 626-52. Ms. Thersleff was responsible for prescribing Ms. Her's psychiatric medication. *See id.* Ms. Thersleff's meeting notes consistently indicated no suicidality, "ok" activity levels and energy, and appropriate mental status examination answers. *See, e.g., id.* at 499, 515, 627, 643. Ms. Her periodically told Ms. Thersleff that her sleep and mood were

improving with treatment and that she was engaging in less negative thinking. *See id.* at 498, 506, 510, 514, 518, 519, 626, 634.

Ms. Thersleff completed two mental impairment questionnaires after Ms. Her's benefits applications had been denied initially and on reconsideration. *Id.* at 527-32, 647-52. In the category of "mental abilities and aptitudes needed to do unskilled work," Ms. Thersleff indicated that Ms. Her was either seriously limited but not precluded, unable to meet competitive standards, or had no useful ability to function as to every category. *Id.* at 529. She exclusively checked the two more limited categories in the section on "mental abilities and aptitudes needed to do semiskilled and skilled work." *Id.* at 530. Finally, she indicated no useful ability to function in two factors on the "mental abilities and aptitude needed to do particular types of jobs," with the rest qualifying as limited but satisfactory. *Id.* Like Dr. Searle, Ms. Thersleff did not complete any of the sections of the forms requesting elaboration on the described limitations. *Id.* at 530-31. Ms. Thersleff's second mental impairment questionnaire indicated "no change to previous form." *Id.* at 652.

### The ALJ's Treatment of Ms. Thersleff's Opinions

ALJ Kuhn closely considered Ms. Thersleff's notes and mental impairment questionnaires. AR at 30-32. She observed that Ms. Thersleff's records largely documented successful symptom management through medication and appropriate mental status examinations. *Id.* at 30. The ALJ summarized Ms. Thersleff's treatment notes, which "were generally unremarkable," before considering Ms. Thersleff's mental impairment questionnaire, which reflected extreme limitations. *Id.* at 30-31. The ALJ found that Ms. Thersleff's "conclusions [were] not supported by the medical evidence of record" and that Ms. Thersleff did not constitute a treating source entitled to deference. *Id.*

### Analysis

The record supports ALJ Kuhn's conclusion. Like Dr. Searle's mental impairment questionnaire, Ms. Thersleff's medical impairment questionnaires are substantially inconsistent with her progress notes. Ms. Thersleff's questionnaire reported severe and extreme limitations. *See id.* at 527-32, 647-52. But her treatment records reflected that Ms. Her reported improvement in her depression, stabilization with medication, and reduced negative thinking. *See, e.g., id.* at 506, 626, 638. And Ms. Thersleff's mental status examinations were consistently within normal limits.

*See, e.g., id.* at 507, 519, 627, 639.  After a thorough review of the record, and for the same reasons applicable to Dr. Searle's questionnaire, the Court finds that the ALJ appropriately discounted Ms. Thersleff's mental impairment questionnaire.

The Court also disagrees with Ms. Her's argument that ALJ Kuhn erred because she failed to note and weigh the consistencies between Ms. Therselff's opinions and Dr. Searle's opinion.  *See* Pl.'s Mem. at 31-33.  The weight to which a medical opinion is entitled is based on a number of factors, including supportability and consistency.  20 C.F.R. § 404.1527(c).  "[T]he more consistent a medical opinion is with the record as a whole, the more weight" ALJs give that opinion.  *Id.*  But ALJs are not required to consider the internal consistency of every opinion with every other opinion.  And Ms. Her cites no caselaw requiring such an analysis.  As a result, Ms. Her's argument that the ALJ was required to consider the specific consistency of Ms. Thersleff's opinion with Dr. Searle's opinion, rather than the opinions' consistency with the record as a whole, is unavailing.

## VI.  Conclusion

For the reasons discussed above, the Court concludes that the Commissioner's decision is supported by substantial evidence in the record as a whole and that the ALJ did not commit legal error.  Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Ms. Her's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**;

2. The Commissioner's Motion for Summary Judgment, **ECF No. 16** is **GRANTED**;

3. The Commissioner's decision denying Ms. Her's benefits application is **AFFIRMED**; and

4. This matter is **DISMISSED WITH PREJUDICE**.

**Let judgment be entered accordingly**.

Date: March 26, 2018

                                         *s/ Katherine Menendez*
                                         Katherine Menendez
                                         United States Magistrate Judge